UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

CIVIL ACTION NO. 08-67-KKC

LEONARD A. PATRICK                                                                                     PLAINTIFF

v.                                        **OPINION AND ORDER**

MICHAEL J. ASTRUE,
*Commissioner of Social Security*,                                                            DEFENDANT

\* \* \* \* \* \* \*

This matter is before the Court on the parties' cross motions for summary judgment. For the reasons stated below, Plaintiff's Motion for Summary Judgment [R. 10] is **DENIED** and the Defendant's Motion for Summary Judgment [R. 11]. is **GRANTED**.

**I.      Introduction**

Plaintiff Leonard Patrick filed an application for disability benefits and Supplemental Security Income on March 28, 2005. [Tr. 21]. Plaintiff was 48 years old at that time, and he alleges that his disability began on August 25, 2004. [Tr. 46]. Plaintiff alleges that he is disabled because of a heart condition that causes shortness of breath, rapid heart beat, and chest pain. [Tr. 50, 61, 69]. His application was denied initially and upon reconsideration. [Tr. 46-49, 51-53]. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and that hearing was held before ALJ Algernon W. Tinsley on June 5, 2007, in Huntington, West Virginia. [Tr. 213-246]. Plaintiff appeared and testified at the hearing, and he was represented by counsel. [Tr. 213-246]. On July 26, 2007, the ALJ issued a written decision and concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since the date his

application was filed. [Tr. 21-29]. Because the Appeals Council denied Plaintiff's request for review, the ALJ's decision stands as the Commissioner's final decision and is now ripe for review under 42 U.S.C. § 1383(c)(3). [Tr. 5-7].

## II.     Discussion

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

### B. Overview of the Process

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to determine whether a social security disability claimant qualifies as legally disabled, and is thus deserving of disability insurance benefits and supplemental security income. *See* 20 C.F.R. § 404.1527(e)(1). To make this determination, the ALJ follows a five-step sequential analysis. First, the claimant must show that he is not engaging in substantial gainful activity. *Id.* § 404.1520(a). If the claimant is engaging in substantial gainful activity, then he is not disabled regardless of his medical condition, age, education, or work experience. *Id.* § 404.1520(b). Second, the claimant must show that he has a mental or physical impairment or combination of impairments that is severe. *Id.* § 404.1520(a). If the claimant does not have a severe mental or physical impairment or combination of impairments, he is not disabled. *Id.* § 404.1520(c). Third, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment. *Id.* § 404.1520(a). If the claimant's impairment or combination of impairments meets or medically equals a listed impairment, then he is disabled. *Id.* § 404.1520(d). If not, then the ALJ must determine the claimant's residual functional capacity before proceeding to the fourth step. *Id.* § 404.1520(e). In the fourth step, the ALJ determines if the claimant has the residual functional capacity to perform his past relevant work. *Id.* § 404.1520(a). If the claimant cannot perform his past relevant work, then the burden shifts to the Commissioner in the final step to show that there is sufficient work in the national economy that the claimant can perform given his residual functional capacity, age, education, and work experience. *Id.*; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If no such work exists, then the claimant is legally disabled. *Id.* § 404.1520(a).

**C. The ALJ's Decision**

In the first step of his analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date of his alleged disabilities, August 25, 2004. [Tr. 23]. At the next step, the ALJ found that Plaintiff suffers from two severe impairments: coronary artery disease and shortness of breath. [Tr. 23]. In making this finding, the ALJ noted that Plaintiff was diagnosed with aggressive cardiac artery disease after the triple bypass surgery performed December 31, 2002. [Tr. 23]. The ALJ also noted that a heart catheterization from July 25, 2005 indicated that Plaintiff's bypass vessels were open. [Tr. 23]. After examining the record from Plaintiff's cardiologist, the ALJ concluded that Plaintiff's impairments, individually or in combination, do not meet or medically equal a listed impairment. [Tr. 24]. Before proceeding to the fourth step of the analysis, the ALJ determined that Plaintiff has the residual functional capacity to perform light work subject only to the limitation of avoiding extreme temperatures. [Tr. 24]. At the fourth step, the ALJ concluded that Plaintiff is unable to perform his past relevant work as a meat cutter. [Tr. 27]. In the final step of his decision, the ALJ relied on the hearing testimony of the vocational expert to determine that there are a sufficient number of jobs in the national economy that Plaintiff can perform given his age, education, work experience, and residual functional capacity. Based on this, the ALJ ultimately concluded that Plaintiff is not disabled as defined by the Social Security Act. [Tr. 29].

**D. Analysis**

**1. Listing 4.04C**.

Plaintiff first argues that the ALJ erred in the third step of the analysis when comparing Plaintiff's impairment with listed impairments set forth in 20 C.F.R. Part 404, Subpart P,

Appendix 1. Specifically, Plaintiff argues that his coronary artery disease meets the listed impairment for ischemic heart disease set forth in Section 4.04C, which states as follows:

>   4.04    Ischemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:
>   
>   . . .
>   
>   C.    Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an [medical consultant], preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:
>   
>   1.    Angiographic evidence showing:
>       a.    50 percent or more narrowing of a nonbypassed left main coronary artery; or
>       b.    70 percent or more narrowing of another nonbypassed coronary artery; or
>       c.    50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
>       d.    50 percent or more narrowing of at least two nonbypassed coronary arteries; or
>       e.    70 percent or more narrowing of a bypass graft vessel; and
>   2.    Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.04C.

At this step of the ALJ's analysis, a claimant bears the burden for establishing that his impairment meets or medically equals a listed impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2002). To do so, the claimant must demonstrate that his impairment satisfies *all* the criteria of a listed impairment. 20 C.F.R. § 404.1525(c)(3). In this case, Plaintiff must present angiographic evidence showing narrowing of a coronary artery or graft vessel *and* other evidence

5

that Plaintiff's coronary artery disease has caused "very serious limitations in [his] ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 4.04C. Plaintiff argues that, contrary to the ALJ's finding, his impairment meets all the criteria of Listing 4.04C.

In his analysis, the ALJ addressed the medical evidence related to Plaintiff's coronary artery disease and compared it with the requirements of Listing 4.04C. [Tr. 24]. Based on records from Dr. Paulus, the ALJ concluded that Plaintiff's impairment did not meet the listed criteria, finding that "a heart catheterization did not show 50% or more narrowing of a coronary artery that resulted in a marked limitation of physical activity." [Tr. 24]. Plaintiff challenges this finding on three grounds. First, Plaintiff argues that the angiographic evidence shows 50% or more narrowing of a left coronary artery as required by section 4.04C.1.a. Second, Plaintiff argues that his coronary artery disease has resulted in very serious limitations in his ability to initiate, sustain, or complete activities of daily living. Third, Plaintiff argues that even if the angiographic evidence does not show that he meets the criteria of Listing 4.04C.1, his case should be remanded for a medical equivalence determination.

Turning first to Plaintiff's second argument, the ALJ found that Plaintiff's coronary artery disease has not "resulted in a marked limitation of physical activity." [Tr. 24]. This decision is supported by substantial evidence in the record. As noted elsewhere in the ALJ's opinion, Plaintiff testified that he cares for his personal hygiene, prepares simple meals for himself, and occasionally does a load of laundry while at home. [Tr. 230-232]. Plaintiff also testified that he has his driver's licence and drives his daughter to the bus stop. [Tr. 217, 231]. Regarding his ability to engage in activity outside the house, Plaintiff testified that he had lost five pounds in

the 30 days prior to the hearing due to being "active outside in the yard." [Tr. 216]. Additionally, Plaintiff reported to his treating physician in 2006 that he was staying active, doing such things as working outside in his garden and using a weed eater. [Tr. 26, 202-203]. This evidence supports the ALJ's conclusion that Plaintiff is not seriously limited in the activities of daily living as required by Listing 4.04C.2. Further, because Plaintiff failed to meet the criteria of 4.04C.2, the Court need not address Plaintiff's first argument under section 4.04C.1, since a claimant must satisfy *all* the listing criteria to meet a listed impairment. 20 C.F.R. § 404.1525(c)(3).

In his final challenge to the third step of the ALJ's analysis, Plaintiff argues that the ALJ should have made a medical equivalence determination according to 20 C.F.R. § 404.1526(b). That section states that medical equivalence will be found when the claimant has listed impairment and "exhibits all of the findings, but one or more of the findings is not as severe as specified in the particular listing, . . . if you have other findings related to your impairment that are at least of equal medical significance to the required criteria." *Id*. Plaintiff argues that the case should be remanded to the ALJ for a medical equivalence determination because evidence in the record shows that Plaintiff *almost* met the listing requirements under Section 4.04C.1.e.. Plaintiff points to the statement in Dr. Paulus's laboratory report from July 25, 2005 that "there was approximately a 60% stenosis within the posterior ventricular branch" of the right coronary artery, and argues that this nearly meets listing 4.04C.1.e., which requires "70% or more narrowing of a bypass graft vessel." [Tr. 106]; 20 C.F.R. Part 404, Subpart P, Appendix 1, 4.04C..

Plaintiff's argument fails for two reasons. First, the term "bypass graft vessel"contained

in Section 4.04C.1.e. refers to a vessel that is grafted to, and therefore bypasses, a coronary artery. In this case, the bypass graft vessel appears to be the "saphenous vein" grafted to the right coronary artery, not the right coronary artery itself. [Tr. 106, "The right coronary artery was up to 90% stenosed but the saphenous vein grafted to it was widely patent."]. As the laboratory report indicates, that vein was widely patent, and thus it does not satisfy the appropriate listing criteria. [Tr. 106].

Second, to establish medical equivalence, Plaintiff must present medical evidence showing "other findings related to your impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b). Plaintiff points to no additional evidence in the record that shows his impairment meets the required criteria. Because the only angiographic evidence in the record shows that Plaintiff does not meet the required criteria, the ALJ's determination that Plaintiff's impairment does not medically equal Listing 4.04C must be affirmed.

## 2. The ALJ's Determination of Plaintiff's Residual Functional Capacity

Plaintiff states his next argument in terms of a failure on the part of the ALJ to properly apply the Grid Rules set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2. In his argument, Plaintiff asserts that his residual functional capacity is limited to sedentary work. As noted, the ALJ found that Plaintiff has the residual functional capacity to perform light work subject only to the limitation of avoiding extreme temperatures. [Tr. 24]. If this finding is supported by substantial evidence, the Grid Rules will not apply as Plaintiff argues.

### a. Dr. Edwards's Medical Opinion

Plaintiff first argues that the ALJ failed to give proper weight to the medical opinion of

Dr. Edwards, Plaintiff's treating physician. The regulations clearly establish that medical opinions from treating sources are entitled to greater weight,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). In fact, an ALJ must give controlling weight to a treating source's medical opinion if "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." *Id.* If a treating source's medical opinion is not given controlling weight, then the ALJ must apply multiple factors in determining how much weight to give the opinion. *Id.* These factors include the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion by relevant evidence, consistency of the opinion with the record as a whole, and specialization of the treating source. *Id.* The regulations also require an ALJ to give good reasons for the weight given to the treating source's opinion. *Id.* This explanation must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

  The ALJ specifically addressed Dr. Edwards's medical opinion regarding Plaintiff's limitations when determining his residual functional capacity. [Tr. 27]. As the ALJ noted, Dr. Edwards "opined that [Plaintiff] is limited to a sedentary range of exertional activity." [Tr. 27]. The ALJ rejected this opinion, however, concluding that "the overall medical evidence of record does not support such a finding." [Tr. 27]. He then mentioned evidence in the record that was

9

contrary to this finding, stating:

> Dr. Edwards (sic) treatment notes dated February 2006 through May 2007 show the claimant has some diminished breath sounds; rapid heart rate only twice a month; and clear lungs, and on several occasions the claimant has denied having chest pains. Further, the claimant continues to smoke one pack of cigarettes per day, work in the yard and garden, and drink caffeinated beverages. Upon examination by a consultative examiner, the claimant was noted to have a normal lung and heart examination.

[Tr. 27, internal citations omitted].

The ALJ properly rejected Dr. Edwards's medical opinion. As noted, an ALJ is required to a give treating source's opinion controlling weight only if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). In this case, the ALJ found that Dr. Edwards's opinion is not supported by the medical evidence in the record. A cursory examination of Dr. Edwards's assessment reveals that it states Plaintiff's limitations in an entirely conclusory fashion, offering no relevant clinical findings or test results that support his opinion. [Tr. 196-199]. Moreover, as the ALJ noted, Dr. Edwards's assessment of Plaintiff's residual functional capacity is inconsistent with his treatment notes in which he places no physical or exertional limitations on Plaintiff's activities. [Tr. 132-140, 200-205]. Dr. Edwards's assessment is also inconsistent with other substantial evidence in the record. Among other things, this includes evidence discussed by the ALJ, such as Plaintiff's statements in Dr. Edwards's treatment notes that Plaintiff has been working in the garden and using a weed eater; Plaintiff's testimony that he had lost weight prior to his hearing due to being active outside; and the medical record from the state consultative examiner that stated that Plaintiff had a normal heart and lung examination. Furthermore, the ALJ clearly explained his rejection of Dr.

Edwards's opinion as required.

**b. Dr. Rawlings's Medical Opinion**

Plaintiff next argues that the ALJ erred by relying on the opinion of a state-agency physician, Dr. Rawlings, in determining his residual functional capacity. Plaintiff argues that because Dr. Rawlings did not examine Plaintiff, his opinion should be accorded little weight. Although the regulations admonish an ALJ to give more weight to the medical opinion of a source that has examined a claimant, 20 C.F.R. § 404.1527(d)(1), all medical opinions submitted will be evaluated, regardless of their source. *Id.* § 404.1527(d).

The ALJ explicitly adopted Dr. Rawlings's assessment of Plaintiff's residual functional capacity. In that assessment, Dr. Rawlings concluded that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk for about six hours in an eight-hour work day, and sit for about six hours in an eight-hour workday. [Tr. 27, 144]. He also concluded that Plaintiff had no other limitations, other than to avoid extreme temperatures. [Tr. 27, 147].

The ALJ considered Dr. Rawlings's assessment and found that it was consistent with the medical evidence in the record, stating:

> Nothing in the claimant's clinical signs which reflect some decreased breath sounds, but no wheezeds or rales (sic); and regular heart rate, suggest that these exertional and non-exertional limitations are unreasonable. Nor does the medical record reflect a treatment regimen inconsistent with such limitations. As a result, the undersigned adopts the above residual functional capacity given by the state agency physician.

[Tr. 27]. Looking to Dr. Rawlings's opinion, the record supports the ALJ's finding that it is consistent with medical evidence in the record. Unlike Dr. Edwards, Dr. Rawlings specifically cited medical evidence in the record in support of his conclusion. In support of his assessment of

11

Plaintiff's exertional limitations, Dr. Rawlings cited an examination report from Dr. Burns dated June 2, 2005, the catheterization report from Dr. Paulus dated July 25, 2005, and treatment notes from Dr. Edwards dated October 26, 2005. [Tr. 144-145]. Dr. Rawlings also addressed Plaintiff's subjective symptoms, noting that the severity of Plaintiff's chest pain was "only partially supported by medical evidence." [Tr. 148]. Dr. Rawlings again references Dr. Paulus's catheterization report from July 25, 2005 in reaching this conclusion. [Tr. 148]. Based on this, substantial evidence supports the ALJ's conclusion that Dr. Rawlings's assessment is consistent with the medical evidence in the record, and the ALJ properly relied on that assessment in determining Plaintiff's residual functional capacity.

### 3. Testimony from the Vocational Expert

Plaintiff's final argument attacks the fifth step of the ALJ's analysis. As noted, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff can perform, and thus he is not disabled. [Tr. 27-28]. The ALJ based this finding on testimony provided by the vocational expert in response to a hypothetical question describing an individual with the same age, education, work experience, and residual functional capacity as Plaintiff. [Tr. 28, 238-239]. The vocational expert testified that there are jobs in the national economy that such an individual could perform, including cashier and non-clerical office helper. [Tr. 239]. Plaintiff now challenges the vocational expert's testimony.

Plaintiff argues that the vocational expert erred by concluding that Dr. Edwards's residual functional capacity report would allow light work jobs. However, this argument fails because the ALJ rejected Dr. Edwards's report in determining Plaintiff's residual functional capacity. As discussed, the ALJ properly relied on Dr. Rawlings's assessment in concluding that Plaintiff has

the residual functional capacity to perform light work, and the record reflects that the ALJ incorporated Plaintiff's ability to perform light work into the hypothetical question presented to the vocational expert. [Tr. 238-239]. An ALJ may use a hypothetical question to determine if a claimant can perform substantial gainful activity in the national economy if that question accurately describes the claimant's physical and mental impairments. *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6thCir. 1987). Here, because the hypothetical question presented to the vocational expert incorporated Plaintiff's residual functional capacity as determined by the ALJ, substantial evidence supports the ALJ's conclusion that significant work exists in the national economy that Plaintiff can perform. Thus, the ALJ properly determined that Plaintiff is not disabled.

**III. Conclusion**

For the reasons discussed above, the Court HEREBY ORDERS that:

(1) Plaintiff's Motion for Summary Judgment [R. 10] is **DENIED**; and

(2) Defendant's Motion for Summary Judgment [R. 11] is **GRANTED**.

Dated this 25th day of June, 2009.



Signed By:
*Karen K. Caldwell*
United States District Judge

13